(No. 4200

DR. ETHEL A. CHAPMAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 6, 1950.*

HELEN L. GLENNON, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant worked from January 1, 1937, to April 1, 1947, at the Elgin State Hospital and from April 1, 1947, to August 18, 1948, at the Chicago Community Clinic as a physician. At the Elgin hospital her duties were to make physical and mental examinations of patients. That she was also relief physician on the Tuberculosis Service and in that capacity she visited the tuberculosis ward about once a week.

The regular work week at the Elgin hospital was 48 hours. During war years and after, from 1942 to 1947, there was a shortage of physicians. Claimant worked extra in the evenings as much as eight or nine hours a week. In addition claimant was on O. D. duty every seven or eight days, which meant she was on call from five o'clock in the evening to eight o'clock the next morning.

Claimant left the Chicago Community Clinic because of a diagnosis that she had minimal active pulmonary tuberculosis on August 18, 1948. She was at the Edwards Sanitarium, Naperville, Illinois, for 90 days, and from November, 1948, until September 1, 1949, she remained at home.

There is no question from the evidence that claimant was exposed to tubercular patients in the performance of her duties.

Dr. Jerome R. Head testified he saw claimant on August 11, 1948, and diagnosed her ailment as minimal pulmonary tuberculosis; and that there might be a causal relation between the illness of claimant and her employment.

Dr. Hoffron testified for the State and stated he was

Assistant Superintendent of Elgin hospital. That he knew claimant. That the rules prescribed that personnel were to don gowns and masks. That during 1942-1946 there was a shortage of physicians and because of this it was necessary to work three to ten hours a week overtime, at night.

Dr. Burock, the Acting Superintendent at the Chicago Community Clinic, testified that clinic did not treat active tubercular patients. That in August, 1948, claimant had a test X-ray which indicated tuberculosis and that she had to leave the service due to illness.

Dr. Teller testified as to his duties at the Elgin hospital and the Chicago Clinic and that rules required physicians to wash after leaving T. B. ward, and wear gowns and masks while in the ward.

The claim, as filed in this Court, predicated respondent's negligence in failing to maintain proper facilities and adequate staff as the proximate cause of claimant's illness.

The brief of claimant predicates the basis of the claim that respondent violated ''An Act concerning the hours of employment of females in certain occupations'' (Ill. Rev. Statutes, 1949, Chap. 48, Sec. 5) which reads in part, ''No female shall be employed . . . in any public . . . institutions or offices thereof, incorporated or unincorporated in this State, more than eight hours during any one day nor more than forty-eight hours in any one week.''

The evidence shows claimant earned in the year immediately before her illness $5,820.00. Claimant was paid $1,943.65 for the period October 7, 1948, to April 7, 1949, and a total of $2,053.17 for unproductive time.

It has been previously held in *Norman* v. *State*, 16 C.C.R. 128 at 131-132, as follows:

"The State not having elected to provide and pay compensation under Section 4 of the Workmen's Occupational Diseases Act, the employee has a right of action, under Section 3 of the Act. That section provides that violation by an employer of any Statute of this State, intended for the protection of the employees, shall constitute negligence of the employer within the meaning of this section."

The evidence shows that claimant was required to work a great deal of overtime in her work and more than eight hours a day; and more than 48 hours a week, and frequently came in contact with tubercular patients. Under the holding of the case of *Norman* v. *State,* supra, this was a violation of "An Act concerning the hours of employment of females in certain occupations" (Ill. Rev. Statutes, Chapter 48, Section 5). Claimant did not come within any of the exceptions in said statute and accordingly is under the terms and provisions of said statute.

As previously held in the *Norman* v. *State,* supra, the violation of this statute constitutes negligence under Section 3 of the Workmen's Occupational Diseases Act.

It is apparent claimant has misconceived her remedy. There is a claim made for compensation under the Act. Her remedy under Section 3 is for damages due to the negligence of the State. The Court will so construe her claim as one for damages for the reason the case was tried on that theory.

Claimant, it was admitted, earned $5,820.00 the year before her illness. The fact she was paid wages and compensation would not bar a recovery for damages, although the Court will consider the same in assessing damages.

The Court concludes that the claimant should be awarded $1,000.00 as damages for the illness she received.

A statement for stenographic services was submitted by William J. Cleary Co. in the amount of $94.13, which is found to be reasonable.

An award in the amount of $94.13 is allowed to William J. Cleary Co.

An award is therefore entered in favor of claimant in the sum of $1,000.00.

An award is entered in favor of William J. Cleary Co. for stenographic services in the amount of $94.13.